A.K., a minor by his parents and next friends, J.K. and E.S., Plaintiff,

v.

**ALEXANDRIA CITY SCHOOL BOARD, Defendant.**

Action No. 1:05cv229.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 27, 2008.

William B. Reichhardt, Esquire, Colleen C. Sweeney, Esquire, Deborah L. McIntyre–Yurkovich, Esquire, William B. Reichhardt & Associates, Fairfax, VA, for Plaintiff.

John F. Cafferky, Esquire, Andrea D. Gemignani, Esquire, Blankingship & Keith, Fairfax, VA, for Defendant.

### MEMORANDUM ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on A.K.'s, a minor by his parents and next friends, J.K. and E.S., and Alexandria City School Board's ("ACPS") Cross-motions for Judgment on the Administrative Record. This case concerns A.K.'s parents' reimbursement claims for private school tuition, transportation costs, and attorney's fees from a public school system, ACPS, under the Individuals with Disabilities Education Act ("IDEA") at 20 U.S.C. §§ 1400–1487.

On December 20, 2005, 409 F.Supp.2d 689, the Court held that ACPS offered A.K. a free appropriate public education ("FAPE") and entered judgment in favor of ACPS, denying A.K.'s parents tuition reimbursement request for the 2004–2005 school year. The United States Court of Appeals for the Fourth Circuit reversed the Court's judgment, ruling that the individualized education program ("IEP") was not reasonably calculated to enable A.K. to receive educational benefits because the IEP failed to identify a particular school for A.K. to attend. The Fourth Circuit remanded this matter and directed the Court to make findings regarding the appropriateness of A.K.'s placement at the Riverview School, a private Massachusetts boarding school selected by his parents, and to resolve A.K.'s parents' reimbursement claim. *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 682 (4th Cir.2007). In a December 7, 2007, Consent Order, the parties agreed that the Riverview School was an appropriate placement for A.K. during the 2004–2005 school year. ACPS agreed to reimburse A.K.'s parents stipulated amounts for tuition, transportation costs, and attorney's fees for the 2004–2005 school year. The Court also agreed to accept additional limited evidence from the parties to determine whether ACPS must reimburse A.K.'s parents for tuition and transportation costs associated with A.K.'s continued attendance of the Riverview School during the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years, as well as attorney's fees. Thus, the remaining issues before the Court are:

(1) whether ACPS identified an appropriate school placement for A.K. for these subsequent periods;

(2) and whether the Riverview School was an appropriate school placement for A.K. during these subsequent periods.

Upon literal application of the United States Court of Appeals for the Fourth Circuit's opinion in *A.K.*, the Court holds that ACPS failed to identify an appropriate school placement for A.K. because ACPS's formal written IEPs did not identify a particular school for A.K. to attend during the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years. Furthermore, the Court finds that the Riverview School was an appropriate school placement for A.K. during these subsequent periods, and awards A.K.'s parents reimbursement for tuition, transportation costs, and reasonable attorney's fees. Thus, A.K.'s Cross-motion for Judgment on the Administrative Record is granted. ACPS's Cross-motion for Judgment on the Administrative Record is denied.

## I. *Background*

A. *Facts And Procedural History*

A.K. is a special education student with multiple disabilities. At age two and one-half, A.K. was first found eligible to receive special education services under the IDEA. A.K. was educated in the ACPS school system through the seventh grade until other students began to tease and assault him and he no longer felt safe. A.K.'s parents subsequently searched unsuccessfully for a private day school in the local area that could meet A.K.'s specialized needs. For the 2003–2004 school year, A.K.'s parents enrolled A.K. in the Riverview School, a private Massachusetts boarding school. The Riverview School is a highly structured environment, and A.K. is with a peer group facing similar academic and social challenges. (Administrative Record [hereinafter "A.R."] 93; A.R. 100; A.R. 103 at 130–31; A.R. 104 at 47–48.) After ACPS proposed a local private day school, A.K.'s parents filed for due process to get reimbursed for the Riverview School tuition. Prior to the due process hearing, the parties settled the case, ACPS funded a portion of the tuition, and A.K. attended the Riverview School from 2003–2004.

The parties attended IEP team meetings in preparation for the 2004–2005 school year. At the end of the final meeting, ACPS announced that A.K. should be placed at an unspecified private day school. ACPS's formal written IEP did not identify a particular school for A.K. to attend for the 2004–2005 school year. Unaware of any private day school in the area that was equipped to meet A.K.'s needs, A.K.'s parents asked ACPS which private day school A.K. could attend. ACPS suggested the Keller School and the Phillips School as possibilities. A.K.'s mother did not believe that either school would be appropriate. Again, A.K.'s parents paid for A.K. to remain at the Riverview School for the 2004–2005 school year.

Under the IDEA, A.K.'s parents sought reimbursement from ACPS for private school tuition and transportation costs for A.K.'s attendance of the Riverview School during the 2004 summer and 2004–2005 school year, as well as attorney's fees. A.K.'s parents argued that they were unable to meaningfully participate in the IEP process because of three procedural violations which denied A.K. a FAPE:

(1) the parents were not notified that private placements in the area would be considered;

(2) ACPS did not disclose specific programs at the IEP meeting;

(3) and ACPS did not present a clear picture regarding what services were available or how they would be provided to A.K.

(Pl's Br. in Supp. of Mot. for Summ. J. 17, Sept. 2, 2005.) The Court held that:

(1) ACPS did not deny A.K.'s parents a meaningful opportunity to participate in the IEP process because A.K.'s parents had more than adequate notice, based on ACPS's recommendation of a local private day school placement for the 2003–2004 school year, that ACPS considered a local private day school placement to be appropriate for A.K. for the 2004–2005 school year;

(2) ACPS's mentioning of the Keller and Phillips Schools during the IEP team meetings constituted an offer of a FAPE because ACPS was not required to identify in writing any specific private school to satisfy the IDEA requirements;

(3) and the services required by A.K. were sufficiently set out in or contemplated by the IEP, in concurrence with the administrative Hearing Officer's conclusion.

(Mem. Order, Dec. 20, 2005.) For the foregoing reasons, the Court granted summary judgment against the parents. (Final J., Dec. 20, 2005.)

The United States Court of Appeals for the Fourth Circuit reversed the Court's decision. *A.K.*, 484 F.3d at 682. The Fourth Circuit held, as a matter of law, that the IEP was not reasonably calculated to enable A.K. to receive educational benefits because the IEP failed to identify a particular school. *Id.* at 681. In remanding the Court's decision, the Fourth Circuit stated:

Our determination that the school district failed to offer a FAPE does not resolve the parents' reimbursement claim, however. The claim remains unresolved because the district court has not made findings regarding the appropriateness of A.K.'s placement at Riverview.... Thus, we remand to the district court for further proceedings consistent with this decision.

*Id.* at 682.

On remand, the parties stipulated that the Riverview School was appropriate for the 2004–2005 school year, and the Court entered a Consent Order for the tuition, transportation costs, and attorney's fees that ACPS agreed to reimburse A.K. for that period. (Consent Order, Dec. 7, 2007.) The Court agreed to accept additional limited evidence from the parties to determine whether ACPS must reimburse A.K. for tuition and transportation costs associated with A.K.'s continued attendance of the Riverview School during the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years, as well as attorney's fees. The parties filed a stipulation for the tuition and transportation costs incurred during these periods, should the Court find in A.K.'s favor. (Stipulation, Dec. 7, 2007.) However, the parties did not include a specific amount for reasonable attorney's fees in the stipulation.

For summer 2004, ACPS's formal written IEP identified "SpEd setting" and "Level II—Private Day School placement" for A.K. (A.R. 77 at 1.) No particular school was named in the IEP. A.K.'s parents received a copy of the IEP, but they did not sign the IEP to consent to enroll A.K. in the unspecified special education program listed in the IEP. (A.R. 77 at 1.) A.K. continued attending the Riverview School.

During an IEP team meeting in preparation for summer 2005, the parties discussed providing services for A.K. at the Treatment and Learning Center, located at the Katherine Thomas School. (A.R. 186 at 36–37.) Although ACPS sent A.K.'s parents a letter specifically mentioning the Katherine Thomas School as a proposed

placement for A.K. for summer 2005 (A.R. 133–34; A.R. 186 at 37–38), ACPS's formal written IEP did not identify the Katherine Thomas School, or any other school, under the provider and location columns. (A.R. 178 at 1.) A.K.'s parents did not sign the IEP (A.R. 178 at 2), and A.K.'s parents never responded to the Katherine Thomas School's attempts to reach them. (A.R. 186 at 39–41.) A.K. continued attending the Riverview School.

Prior to the IEP team meetings in preparation for the 2005–2006 and 2006–2007 school years, A.K.'s parents researched potential private day schools in the area, including the Katherine Thomas School and the Phillips School. (A.R. 187 at 19–20.) After researching local schools, which included visits to actual locations and extensive consultation with experts familiar with A.K., A.K.'s mother concluded that none of the schools were appropriate and "in fact, in some cases, would be detrimental." (A.R. 187 at 20–23.)

A.K.'s parents signed a contract for A.K. to attend the Riverview School for the 2005–2006 school year on March 30, 2005, before the first IEP meeting was held on June 6, 2005, in preparation for the 2005–2006 school year. (A.R. 184; A.R. 178.) Regardless, both parties participated in the IEP team meetings and discussed specific private day schools that ACPS believed would be appropriate for A.K. (A.R. 178; A.R. 186 at 30.) However, ACPS's formal written IEP only identified "Special Education setting," "Special Classes," "Private Day School," and "Private Residential Facility" for the 2005–2006 school year. (A.R. 178 at 23–24.) A.K.'s parents received a copy of the IEP, but they did not sign the IEP to permit implementation of the IEP and placement decision. (A.R. 178 at 25.) Although ACPS sent a package to the Katherine Thomas School on behalf of A.K., A.K.'s parents did not respond to phone calls from the school's director regarding admission for the 2005–2006 school year. (A.R. 186 at 44–45.) A.K. continued attending the Riverview School.

After ACPS staff traveled to the Riverview School and assessed A.K. in February 2006 (A.R. 186 at 55–57), ACPS concluded that A.K. continued to have the same disabilities. (A.R. 147, A.R. 186 at 59–60.) A.K.'s parents signed a contract for A.K. to attend the Riverview School for the 2006–2007 school year on April 3, 2006, the same date as the first IEP meeting in preparation for the 2006–2007 school year. (A.R. 185.) Regardless, both parties attended the IEP team meetings and discussed several private day schools that would be appropriate for A.K., including the Katherine Thomas School. (A.R. 186 at 92–95.) However, yet again, ACPS's formal written IEP only identified "Special Classes," "Private Day School," and "Private Residential Facility" for A.K. for the 2006–2007 school year. (A.R. 180 at 33–34.) A.K.'s parents received a copy of the IEP, but they did not sign the IEP to permit implementation of the IEP and placement decision. (A.R. 180 at 35.) Even though both the Katherine Thomas School and the Phillips School offered to interview A.K., A.K.'s parents did not respond to phone calls from the Katherine Thomas School and cancelled the Phillips School interview. (A.R. 171; A.R. 172; A.R. 186 at 103–05.) A.K. continued attending the Riverview School.

Susan B. Sullivan [hereinafter "S. Sullivan"], the ACPS IEP Chairperson, acknowledged that the IEPs for the subsequent periods only noted a level of service, "private day school," as the identified placement, rather than a particular school. (A.R. 186 at 27, 30, 88, 92, 229–32.) S. Sullivan also acknowledged that A.K. progressed at the Riverview School. (A.R.

186 at 28.) Additionally, S. Sullivan testified about ACPS's funding procedure for all private day and residential schools, which involves a contractual agreement with the Alexandria City Policy Management Team ("ACPMT"). (A.R. 186 at 225.) ACPMT is an oversight committee that has a contractual relationship with private day and residential placements and funnels state funds to those placements. (A.R. 186 at 225–26.) To secure funds from the ACPMT, ACPS must go before a Family Assessment and Planning Team ("FAPT") to secure monies for the placement. (A.R. 186 at 226.) Sometimes students are placed at a school prior to the FAPT meeting that secures monies for the placement, but usually the monies are secured at an FAPT meeting prior to the student's placement. (A.R. 186 at 226–27.) ACPS did not go to an FAPT meeting to secure monies for A.K.'s private day placement in 2005–2006 or 2006–2007. (A.R. at 227.)

### B. *Arguments*

A.K.'s parents contend that:

(1) ACPS failed to identify a particular school in A.K.'s IEPs for the subsequent periods, denying A.K. a FAPE;

(2) and the Riverview School was an appropriate placement for A.K. during the subsequent periods.

Conversely, ACPS argues that:

(1) the parties extensively discussed specific private day school placements at the IEP team meetings for the subsequent periods, providing A.K. with a FAPE;

(2) and A.K.'s parents refused to participate in the required interview process that would enable a specific private day school to accept A.K., preventing ACPS from identifying a specific private day school placement in the written IEPs, which amounts to parental non-cooperation under 20 U.S.C. § 1412(a)(10)(C)(iii)(III).

The parties now move for Judgment on the Administrative Record for these subsequent periods.

### II. *Discussion*

### A. *Standard Of Review*

■■■ In a Motion for Judgment on the Administrative Record, the court shall receive the records of the administrative proceedings, hear additional evidence at the request of a party, and, base its decision on the preponderance of the evidence, grant such relief as the court determines is appropriate. *See* 20 U.S.C. § 1415(i)(2)(C) (2000). Determining whether an IEP is sufficient is a factual finding subject to review for clear error. *A.K.*, 484 F.3d at 679 (citing *County Sch. Bd. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 309 n. 7 (4th Cir.2005)).

### B. *Analysis*

The Court grants A.K.'s Cross-motion for Judgment on the Administrative Record, and denies ACPS's Cross-motion for Judgment on the Administrative Record, because ACPS failed to provide A.K. with a FAPE for the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years. Furthermore, the Court finds that the Riverview School was an appropriate school placement for A.K. during these subsequent periods and awards A.K.'s parents reimbursement for tuition and transportation costs in the amounts stipulated by the parties, as well as reasonable attorney's fees.

■■■ A school provides a FAPE by creating an IEP for each child. *See* 20 U.S.C. § 1414(d)(1)(A) (2000). Before creating the IEP, the school district must conduct an initial evaluation to determine the stu-

dent's eligibility and to identify his educational needs. *See id.* § 1414(a)(1)(A)-(C). If the child is deemed eligible, an IEP is created by an IEP team comprised of the child's parents, at least one of his special education teachers, a school board representative, an individual who can interpret evaluation results, and, if appropriate, the child himself. *See id.* § 1414(d)(1)(A)(i). The IEP must provide, among other things, "the projected date for the beginning of the services and modifications ..., and the anticipated frequency, location, and duration of those services and modifications." *See id.* § 1414(d)(1)(A)(i)(VII). An IEP is substantively satisfactory if it is "reasonably calculated to enable the child to receive educational benefits." *Bd. Of Educ. v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

■ "When a state receiving IDEA funding fails to provide a FAPE, the child's parent may remove the child to a private school and then seek tuition reimbursement from the state." *A.K.,* 484 F.3d at 679 (quoting *A.B. ex rel. D.B. v. Lawson,* 354 F.3d 315, 320 (4th Cir.2004)). The IDEA also provides funding for related services, including transportation costs. 20 U.S.C. § 1401(26)(A) (2000). Additionally, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs ... to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B) (2000). "The parent may recover if (1) the proposed IEP was inadequate to offer the child a FAPE and (2) the private education services obtained by the parents were appropriate to the child's needs." *A.K.,* 484 F.3d at 679 (quoting *A.B.,* 354 F.3d at 320).

1. *FAPE*

■ ACPS failed to provide A.K. with a FAPE for the 2004 and 2005 summers and

the 2005–2006 and 2006–2007 school years because ACPS did not identify a particular school in any of the IEPs. "[A]n IEP must state 'the projected date for the beginning of the services and modifications ..., and the anticipated frequency, *location*, and duration of those services and modifications.'" *A.K.,* 484 F.3d at 680 (quoting 20 U.S.C. 1414(d)(1)(A)(i)(VII) (2000)) (emphasis added). The parents bear the burden of proving that an IEP is substantially deficient. *Id.* at 679 (citing *Spielberg ex rel. Spielberg v. Henrico County Pub. Sch.,* 853 F.2d 256, 258 n. 2 (4th Cir.1988)). "[U]pon a judicial finding of unreasonableness with respect to actions taken by the parents[,]" the court may limit reimbursement to parents who place their disabled child in private school without the public agency's consent or referral. 20 U.S.C. § 1412(a)(10)(C)(iii)(III) (2000).

In *A.K.,* the United States Court of Appeals for the Fourth Circuit held that the IEP for the 2004–2005 school year was not reasonably calculated to enable A.K. to receive educational benefits because the IEP failed to identify a particular school. 484 F.3d at 681 (citing *Rowley,* 458 U.S. at 207, 102 S.Ct. 3034). The Fourth Circuit considered the violation of the IDEA to be substantive because the deficiency pertained to the educational placement and services that ACPS offered. *Id.* at 679 n. 7. After emphasizing the importance of including the particular location where special education services will be provided in an IEP, the Fourth Circuit stated that "it is incumbent on the school district to utilize its expertise to 'clearly identify an appropriate placement from the range of possibilities.'" *Id.* at 680–81 (quoting *Glendale Unified Sch. Dist. v. Almasi,* 122 F.Supp.2d 1093, 1108 (C.D.Cal.2000)). "In evaluating whether a school district offered a FAPE, a court generally must limit its consideration to the terms of the

IEP itself." *Id.* at 682 (citing *Z.P.*, 399 F.3d at 306 n. 5; *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 768 (6th Cir.2001)).

> Expanding the scope of a district's offer to include a comment made during the IEP development process would undermine the important policies served by the requirement of a formal written offer, namely, 'creating a clear record of the educational placement and other services *offered to the parents*' and '*assist[ing] parents* in presenting complaints with respect to any matter relating to the ... educational placement of the child.'

*Id.* (quoting *Knable*, 238 F.3d at 768) (emphasis added). "[I]n a case in which the parents express doubt concerning the existence of a particular school that can satisfactorily provide the level of services that the IEP describes, the IEP must identify such a school to offer a FAPE." *A.K.*, 484 F.3d at 682. The Fourth Circuit concluded that "[e]specially in this case, in which the parents had tried in vain to find a local private day school that could meet A.K.'s specialized needs, the offer of an unspecified 'private day school' was essentially no offer at all." *Id.*

Similar to the deficient IEP for the 2004–2005 school year in *A.K.*, a plain reading of the formal written IEPs for the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years establishes that ACPS failed to identify a particular school in each of the IEPs. Although ACPS discussed several "private day school" possibilities, such as the Phillips School and the Katherine Thomas School,

with A.K.'s parents at multiple IEP team meetings during the relevant periods and sent packages to those schools on A.K.'s behalf, the ACPS failed to provide A.K. with a formal written offer showing a clear record of the educational placement at a particular school.[1] As in the 2004–2005 school year at issue in *A.K.*, the parents continued to express doubt concerning the existence of a particular school that could provide appropriate services for these subsequent periods. Pursuant to the Fourth Circuit's holding in *A.K.*, the ACPS failed to offer a FAPE when ACPS did not expressly identify a particular school in the IEPs for the subsequent periods.

Although ACPS alleged that A.K.'s parents did not cooperate during the IEP development process by refusing to allow A.K. to participate in school interviews, the court does not find that A.K.'s parents acted unreasonably. While the Administrative Record reflects that the parents signed contracts with the Riverview School prior to the completion of the IEP process for the 2005–2006 and 2006–2007 school years, the record is also clear that the parents continued to fully participate in the IEP process with the limited exception of presenting the child for interviews with prospective school placements. The Court finds no reason why the ACPS could not specify a particular school, such as the Katherine Thomas School, in ACPS's formal written IEP because an IEP is not a funding contract between ACPS and a particular school. (A.R. 225–27.) *See also A.K.*, 484 F.3d at 682. Thus, if A.K.'s IEP specified the Katherine Thomas School

---

1. *See* A.R. 77 at 1 (identifying "SpEd setting" and "Level II—Private Day School placement" in the IEP for summer 2004); A.R. 178 at 1 (identifying no school under the provider and location columns in the IEP for summer 2005); A.R. 178 at 23–24 (identifying "Special Education Setting," "Special Classes,"

"Private Day School," and "Private Residential Facility" in the IEP for school year 2005–2006); A.R. 180 at 33–34 (identifying "Special Classes," "Private Day School," and "Private Residential Facility" in the IEP for school year 2006–2007).

and A.K. was subsequently interviewed and admitted to the school, A.K.'s parents could still refuse to sign the IEP, reject the proposed placement at the Katherine Thomas School, and opt for the Riverview School, In such a case, A.K.'s parents would not be entitled to reimbursement from ACPS for private school tuition because the IEP would have provided a FAPE.

Pursuant to the Fourth Circuit's holding in *A.K.*, ACPS failed to provide A.K. with a FAPE for the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years because ACPS did not identify a particular school in any of the IEPs.

### 2. *Appropriateness*

■ Having concluded that ACPS failed to provide A.K. with a FAPE, the Court further finds that the Riverview School was an appropriate school placement for A.K. for the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years because:

(1) the parties stipulated that the Riverview School was appropriate for the 2004–2005 school year;

(2) A.K.'s disabilities were the same during the subsequent periods;

(3) and A.K. continued to progress at the Riverview School during the subsequent periods.

"A FAPE 'consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction.'" *Z.P.*, 399 F.3d at 300 (quoting *Rowley*, 458 U.S. at 188–89, 102 S.Ct. 3034). While an "appropriate" education does not mean the "best" possible education, "Congress did not intend that a school system could discharge its duty under the [Act] by providing a program that produces some minimal academic advancement, no matter how trivial." *Id.* at 300 (citing *MM ex rel. DM v. Sch. Dist.*, 303 F.3d 523, 526–27 (4th Cir.2002)) and quoting *Hall ex rel. Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 636 (4th Cir.1985).

The parties stipulated that the Riverview School was appropriate for the 2004–2005 school year. (Consent Order, Dec. 7, 2007.) Furthermore, the parties have not alleged any facts to indicate that the Riverview School was inappropriate for the subsequent periods. During the subsequent periods, A.K.'s disabilities did not change. (A.R. 147, A.R. 186 at 59–60.) Moreover, A.K. continued to progress at the Riverview School. (A.R. 186 at 28.) Thus, the Court finds that the Riverview School was an appropriate school placement for A.K. during these subsequent periods.

### III. *Conclusion*

The Court holds that ACPS failed to provide A.K. with a FAPE during the 2004 and 2005 summers and the 2005–2006 and 2006–2007 school years because ACPS's formal written IEPs did not identify a particular school for A.K. to attend during these subsequent periods. Furthermore, the Court finds that the Riverview School was an appropriate school placement for A.K. during these subsequent periods. Thus, the Court finds that A.K.'s parents are entitled to reimbursement under the IDEA for tuition and transportation costs in the amounts specified in the parties' December 7, 2007, Stipulation. The Court also awards A.K.'s parents reasonable attorney's fees, pending the prompt submission of an application to the Court.

For the foregoing reasons, it is hereby

ORDERED that A.K.'s Cross-motion for Judgment on the Administrative Record is GRANTED. It is further

ORDERED that ACPS's Cross-motion for Judgment on the Administrative Record is DENIED. It is further

ORDERED that ACPS shall pay A.K. $5,800.00, the stipulated cost for summer 2004 tuition. It is further

ORDERED that ACPS shall pay A.K. $6,000.00, the stipulated cost for summer 2005 tuition. It is further

ORDERED that ACPS shall pay A.K. $57,600.00, the stipulated cost for school year 2005–2006 tuition. It is further

ORDERED that ACPS shall pay A.K. $59,620.00, the stipulated cost for school year 2006–2007 tuition. It is further

ORDERED that ACPS shall pay A.K. $3,704.00, the stipulated cost for transportation during school year 2005–2006. It is further

ORDERED that ACPS shall pay A.K. $3,388.85, the stipulated cost for transportation during school year 2006–2007. It is further

ORDERED that A.K. shall promptly submit an application to the Court for reasonable attorney's fees.

The Clerk is directed to forward a copy of this Order to counsel of record.